## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KHALIQ MURRAY,
an individual,

                                            Case No.:

       Plaintiff,

v.

GENERAL REVENUE CORPORATION,
a foreign profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

       Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, KHALIQ MURRAY (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, GENERAL REVENUE CORPORATION (hereinafter, "GRC") and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for GRC's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein GRC improperly credit-reported and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Trans

Union that was created or allegedly incurred as a result of identity theft and fraud. More specifically, despite Plaintiff repeatedly advising GRC that he did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed GRC's reporting of such erroneous information directly to Trans Union— GRC *continued* to report this fraudulent account with a significant balance due and past-due.

2.     Furthermore, this is an action for damages for Trans Union's violations of the FCRA wherein Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the alleged GRC account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Trans Union including an FTC affidavit.

3.     This is also an action for damages for GRC's violations of the Florida Consumer Collection Practices Act, Chapter 559 Florida Statutes (hereinafter, the "FCCPA"), wherein GRC communicated with Plaintiff in an attempt to collect a consumer debt GRC knew was not legitimately owed by Plaintiff.

4.     Finally, this is an action for damages brought by an individual consumer for GRC's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein GRC deceptively and unfairly attempted to collect an alleged consumer debt from Plaintiff in an amount not owed by Plaintiff.

## **JURISDICTION, VENUE & PARTIES**

5.     Jurisdiction of this Court arises under 28 United States Code, Section

1331 as well as pursuant to the FCRA, 15 United States Code, Section 1681 *et seq*. and 15 United States Code, Section 1692 *et seq*.   The Court has authority to issue a declaratory judgment under 28 United States Code, Section 2201 and has supplemental authority over Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

6.   Defendants are subject to the jurisdiction of this Court, as Defendants each regularly transact business in this District.

7.   Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

8.   At all material times herein, Plaintiff is a natural person residing in Leon County, Florida.

9.   At all material times herein, GRC is a foreign profit corporation existing under the laws of the state of Ohio with its principal place of business located at 4660 Duke Drive, Suite 200, Mason, Ohio 45040.

10.   At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCCPA AND FDCPA STATUTORY STRUCTURE

11.   The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of

individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

12.    The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.   15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

13.    Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

14.    For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  *See* 15 U.S.C. §§ 1692(d)-(e).

15.    Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt in a manner that can be expected to harass or abuse the consumer debt and prohibits a person from attempting to collect a consumer debt that is known to be illegitimate.  *See* Fla. Stat. §§ 559.72 (7) and (9).

## FCRA STATUTORY STRUCTURE

16.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the

consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

17.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

18.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

19.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

20.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

21.    Under the FCRA, after a furnisher of information receives notification

5

pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

22.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

23.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

24.    At all material times herein, Plaintiff is a "debtor" or "consumer" as

6

defined by the FCRA, FCCPA, and FDCPA because he is an individual and allegedly obligated to pay a debt.

25.    At all material times herein, GRC, itself and through its subsidiaries, regularly services debt collection accounts—and credit reports debts associated with the same—allegedly owed by consumers residing in Leon County, Florida.

26.    At all material times herein, GRC is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *see also Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

27.    At all material times herein, GRC is a "debt collector" as defined by the FCCPA, Section 559.55(7) and the FDCPA, Section 1692a(6).

28.    At all material times herein, GRC is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

29.    At all material times herein, GRC reports information concerning an alleged deficiency resulting from a student loan account to Trans Union, including but not limited to, a tradeline account related to an alleged debt originally owed to the College of Southern Nevada, referenced by account number beginning 719659- (hereinafter, the "Account" or "Alleged Debt").

30.    At all material times herein, GRC engages in a business, the purpose of which is the collection of consumer debts.

31.    At all material times herein, GRC collects or attempts to collect—directly or indirectly—debts owed or due to another or asserted to be owed or due to another

from consumers in Leon County, Florida.

32.    At all material times herein, the Alleged Debt is a consumer debt, incurred primarily for personal, household, or family use.

33.    At all material times herein, GRC's conduct, with respect to the Alleged Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

34.    Specifically, at all material times herein, GRC sent collection letters directly to Plaintiff in an attempt to collect the Alleged Debt.

35.    Further, at all material times herein, GRC reports credit information (i.e., the Account) including a balance which is known or which should be known to be false.

36.    At all material times herein, GRC furnishes incorrect and/or incomplete information concerning the Account to Trans Union—continuing after Plaintiff's repeated disputes—despite Plaintiff not owing the balance reported by GRC.

37.    GRC furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

38.    At all material times herein, Trans Union is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating

information concerning consumers for the purpose of furnishing consumer reports. Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

39.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

40.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

41.     On or about April 17, 2024, a student loan account with the College of Southern Nevada was allegedly opened in Plaintiff's name.

42.     To the extent the student loan account was opened by an individual or entity, such individual or entity opened the account without Plaintiff's consent, knowledge, or approval.

43.     Plaintiff did not receive billing statements at his address from GRC regarding the account.

44.     To the extent that charges were made on the account after its inception resulting in an alleged balance due (i.e., the Alleged Debt), Plaintiff did not make any such charges himself, Plaintiff did not authorize any other individual or entity to make charges for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of charges made on the Account.

45.     To be clear, Plaintiff has never even lived in Nevada, much less attended the College of Southern Nevada.

### GRC'S COMMUNICATIONS MADE
### IN AN ATTEMPT TO COLLECT THE ALLEGED DEBT

46.     Prior to or about June 21, 2024, the College of Southern Nevada turned the Alleged Debt over to GRC for collection from Plaintiff.

47.     Prior to or about June 21, 2024, and upon information and belief, Plaintiff obtained a copy of his consumer disclosure report as maintained by Trans Union.

48.     At this time, despite never personally opening the student loan account nor authorizing anyone to open the student loan account on his behalf, Plaintiff discovered that GRC was reporting a collections account regarding the Alleged Debt (the "Account") on Plaintiff's Trans Union credit report as owed by Plaintiff personally with a balance due and past-due in the amount of $1,744.00.

49.     Defendants' reporting of the Account with a balance due or past-due is inaccurate because any alleged balance owed was the result of identity theft and fraud.

50.     To be clear, Plaintiff never opened the student loan account nor did he authorize the opening of the student loan account.

51.     Defendants' reporting of historical or current late payment information is similarly inaccurate because any alleged balance owed was the result of identity theft and fraud, and therefore, Plaintiff could not be late or past-due on a balance he does not owe.

52.    Prior to or about June 21, 2024, Plaintiff disputed the Account to GRC, advising GRC that Plaintiff had never opened a student loan account with the College of Southern Nevada and as such did not owe a collections balance to GRC.

53.    On or about June 21, 2024, and in response to Plaintiff's dispute to GRC, GRC sent a letter to Plaintiff purportedly verifying the information reported erroneously on Plaintiff's Trans Union credit report and including a debt collection letter regarding the alleged balance on the Account.

54.    More specifically, despite GRC knowing that Plaintiff did not owe $1,744.00 on the Alleged Debt, GRC sent *both* its dispute response dated June 21, 2024 *and* a collection letter dated June 20, 2024 to Plaintiff wherein Defendants demanded a balance from Plaintiff on the Alleged Debt in the amount of $1,744.00.

55.    As such, GRC's dispute response dated June 21, 2024 and GRC's collection letter dated June 20, 2024 each constitute an attempt by GRC to collect the Alleged Debt from Plaintiff.

## PLAINTIFF'S FIRST DISPUTE

56.    On or about August 12, 2024, and with the assistance of his attorneys Plaintiff sent a letter to Trans Union, disputing Defendants' reporting of the Account with a balance owed and as belonging to Plaintiff (hereinafter, "First Dispute").

57.    More specifically, Plaintiff advised Trans Union that Plaintiff had never applied to nor attended the College of Southern Nevada and as such, Plaintiff owed no student loan balances to the College of Southern Nevada.

58.    Further, Plaintiff advised Trans Union that Plaintiff resides in Florida,

not Nevada.

59.    Trans Union received Plaintiff's First Dispute.

60.    Trans Union communicated Plaintiff's First Dispute to GRC.

61.    GRC received notice of Plaintiff's First Dispute via Trans Union.

62.    In response to Plaintiff's First Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due and past due in excess of $1,700.00.

63.    On or about October 2, 2024, Plaintiff filed an FTC Identity Theft affidavit regarding the student loan account and the resulting collections account, referenced by FTC report number 178276913.

**PLAINTIFF'S SECOND DISPUTE**

64.    As of October 2024, Trans Union and GRC were still reporting the fraudulent Account with an alleged past-due balance in excess of $1,700.00.

65.    On or about October 17, 2024, with the assistance of his attorneys, Plaintiff sent *another* letter to Trans Union, *again* disputing Trans Union's and GRC's credit reporting of the Account, *again* advising that the Account should be deleted from Plaintiff's credit report, and *again* demanding that Trans Union and GRC investigate and update accordingly (hereinafter, "Second Dispute").

66.    Plaintiff's Second Dispute *again* advised Trans Union that Plaintiff had never applied to nor attended the College of Southern Nevada and as such, Plaintiff owed no student loan balances to the College of Southern Nevada.

12

67.    Likewise, Plaintiff's Second Dispute *again* advised Trans Union that Plaintiff resides in Florida, not Nevada.

68.    Trans Union received Plaintiff's Second Dispute.

69.    Trans Union communicated Plaintiff's Second Dispute to GRC.

70.    GRC received Plaintiff's Second Dispute from Trans Union.

71.    In response to Plaintiff's Second Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due and past due in excess of $1,700.00.

### PLAINTIFF'S THIRD DISPUTE

72.    As of November 2024, Trans Union and GRC were *still* reporting the Account inaccurately with an alleged balance past-due in excess of $1,700.00.

73.    On or about November 11, 2024, with the assistance of his attorneys, Plaintiff sent *another* letter to Trans Union, *again* disputing Trans Union's and GRC's credit reporting of the Account, *again* advising that the Account should be deleted from Plaintiff's credit report, and *again* demanding that Trans Union and GRC investigate and update accordingly (hereinafter, "Third Dispute").

74.    Plaintiff enclosed a copy of Plaintiff's FTC Affidavit in support of his Third Dispute.

75.    Trans Union received Plaintiff's Third Dispute.

76.    In response to Plaintiff's Third Dispute, Trans Union finally deleted its

reporting of the Account.

## DAMAGES

77.     As a result of Trans Union's and GRC's erroneous reporting of the Account including a balance not owed by Plaintiff, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

78.     Following Plaintiff's First Dispute, Trans Union generated Plaintiff's credit reports containing the fraudulent account and published such credit reports to Plaintiff's current creditors and potential lenders.

79.     Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct.

80.     Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

81.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Trans Union and/or GRC.

82.     United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, costs, and an award of attorneys' fees to Plaintiff, should Plaintiff prevail in this matter against GRC.

83.     As a result of Trans Union's and GRC's conduct, actions, and inactions, Plaintiff was deterred from making further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with a fraudulent balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

84.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite never opening the student loan account forming the basis of the Account, Plaintiff must simply endure GRC's unlawful reporting of the Account and unlawful attempts to collect the Alleged Debt from Plaintiff.

## COUNT ONE
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)
### (as to GRC only)

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

85.     GRC is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same, and failing to request that Trans Union correct the

reporting of the Account on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

86.     More specifically, as of June 2024, a student loan account with the College of Southern Nevada was opened in Plaintiff's name without Plaintiff's knowledge or consent.

87.     To the extent the student loan account was opened by an individual or entity, such individual or entity opened the account without Plaintiff's consent, knowledge, or approval.

88.     As such, Plaintiff never owed the Alleged Debt.

89.     During or before June 2024, the College of Southern Nevada turned the Alleged Debt over to GRC for collection from Plaintiff.

90.     Upon discovering the Account being reported on Plaintiff's Trans Union credit report, Plaintiff disputed the Account to GRC, advising GRC that Plaintiff had never opened a student loan account with the College of Southern Nevada and as such did not owe a collections balance to GRC.

91.     As such, as of June 2024, GRC received notice and possessed knowledge that Plaintiff did not owe a balance to the College of Southern Nevada because Plaintiff had never incurred the loan forming the balance of the Alleged Debt.

92.     Despite Plaintiff not owing a balance to the College of Southern Nevada, GRC subsequently reported the Account to Trans Union with an alleged balance due and past-due in excess of $1,700.00.

93.     Between August 2024 and November 2024, GRC received notice of

Plaintiff's First Dispute, Second Dispute, and Third Dispute from Trans Union.

94.    Following Plaintiff's repeated disputes, GRC falsely confirmed and/or verified its erroneous reporting to Trans Union and GRC continued to report the Account as due and past-due in excess of $1,700.00.

95.    GRC's refusal to request that Trans Union delete the collection Account balance was done intentionally, willfully, and/or knowingly as GRC falsely verified its erroneous reporting of the Account in response to repeated disputes from Plaintiff.

96.    GRC's investigations/re-investigations were not conducted in good faith.

97.    GRC's investigations/re-investigations were not conducted reasonably.

98.    GRC's investigations/re-investigations were not conducted using all information reasonably available to GRC.

99.    As a result of GRC's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit applications, and he was deterred from making further credit applications as he believed he would not be able to obtain favorable credit terms as a result of GRC's derogatory and continued reporting of the Account and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with a significant and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

100.   GRC's conduct was a direct and proximate cause of, as well as a

17

substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

101.    GRC's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(7) AND (9)**
**(as to GRC)**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

102.    GRC is subject to, and violated the provisions of, Florida Statutes, Sections: 559.72(7) by attempting to collect an alleged consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff; and 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimate or by asserting the existence of a legal right when Defendant knows that the right does not exist.

103.    Specifically, as of June 2024, a student loan account with the College of Southern Nevada was opened in Plaintiff's name without Plaintiff's knowledge or consent.

104.    To the extent the student loan account was opened by an individual or

entity, such individual or entity opened the account without Plaintiff's consent, knowledge, or approval.

105.    As such, Plaintiff never owed the Alleged Debt.

106.    During or before June 2024, the College of Southern Nevada turned the Alleged Debt over to GRC for collection from Plaintiff.

107.    Upon discovering the Account being reported on Plaintiff's Trans Union credit report, Plaintiff disputed the Account to GRC, advising GRC that Plaintiff had never opened a student loan account with the College of Southern Nevada and as such did not owe a collections balance to GRC.

108.    As such, as of June 2024, GRC received notice and possessed knowledge that Plaintiff did not owe a balance to the College of Southern Nevada because Plaintiff had never incurred the loan forming the balance of the Alleged Debt.

109.    Despite Plaintiff not owing a balance to the College of Southern Nevada or GRC, On or about June 21, 2024, GRC sent a letter to Plaintiff in response to Plaintiff's dispute to GRC, purportedly verifying the information reported erroneously on Plaintiff's Trans Union credit report and including a debt collection letter regarding the alleged balance on the Account.

110.    More specifically, despite GRC knowing that Plaintiff did not owe $1,744.00 on the Alleged Debt, GRC sent *both* its dispute response dated June 21, 2024 *and* a collection letter dated June 20, 2024 to Plaintiff wherein Defendants demanded a balance from Plaintiff on the Alleged Debt in the amount of $1,744.00.

111.    As such, GRC's dispute response dated June 21, 2024 and GRC's

collection letter dated June 20, 2024 each constitute an attempt by GRC to collect the Alleged Debt from Plaintiff.

112.    GRC sent its collection communications to Plaintiff in an attempt to abuse and harass Plaintiff into paying the Alleged Debt by leading Plaintiff to believe that despite Plaintiff not owing the Alleged Debt, GRC could and would continue to communicate with Plaintiff in an attempt to collect the Alleged Debt unless and until Plaintiff made payment to GRC on the Alleged Debt.

113.    In other words, GRC's conduct served no purpose other than to wrench payment from Plaintiff on a consumer debt Plaintiff does not owe.

114.    GRC's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

115.    Moreover, GRC knew that Plaintiff did not owe $1,744.00 on the Alleged Debt yet GRC's collection communication demanded over $1,700.00 from Plaintiff on the Alleged Debt.

116.    As such, GRC communicated with Plaintiff in an attempt to collect an Alleged Debt known by GRC to be illegitimate in violation of Florida Statutes, Section 559.72(9).

117.    As a direct and proximate result of GRC's action, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d**

**(as to GRC)**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

118.    GRC is subject to, and violated the provisions of, 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with its collection of the Alleged Debt.

119.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt balance asserted by GRC.

120.    During or about April 2024, a student loan account with the College of Southern Nevada was opened in Plaintiff's name without Plaintiff's knowledge or consent.

121.    To the extent the student loan account was opened by an individual or entity, such individual or entity opened the account without Plaintiff's consent, knowledge, or approval.

122.    During or before June 2024, the College of Southern Nevada turned the Alleged Debt over to GRC for collection from Plaintiff.

123.    Upon discovering the Account being reported on Plaintiff's Trans Union credit report, Plaintiff disputed the Account to GRC, advising GRC that Plaintiff had never opened a student loan account with the College of Southern Nevada and as such did not owe a collections balance to GRC.

124.    As such, as of June 2024, GRC received notice and possessed knowledge that Plaintiff did not owe a balance to the College of Southern Nevada because

21

Plaintiff had never incurred the loan forming the balance of the Alleged Debt.

125.    Despite Plaintiff not owing a balance to the College of Southern Nevada or GRC, On or about June 21, 2024, GRC sent *at least* two (2) collection letters to Plaintiff asserting a balance owed by Plaintiff in excess of $1,700.00 with respect to the Alleged Debt.

126.    GRC's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite Plaintiff not owing the Alleged Debt, GRC could and would continue to communicate with Plaintiff in an attempt to collect the Alleged Debt unless and until Plaintiff made payment to GRC on the Alleged Debt.

127.    As a direct and proximate result of GRC's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT FOUR:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE
## <u>SECTIONS 1692e, e(2)(A), e(8), and e(10)</u>
## (as to GRC)

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

128.    GRC is subject to, and violated the provisions of, 15 United States Code, Sections 1692e, e(2)(A), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

129.    Further, GRC is subject to, and violated the provisions of, 15 United

States Code, Section 1692e(8) by threatening to communicate or communicating to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

130.    More specifically, Plaintiff was not and is not personally liable for the Alleged Debt balance asserted by GRC.

131.    GRC knew or should have known that Plaintiff did not owe a balance on the Alleged Debt because GRC received Plaintiff's dispute directly to GRC advising GRC that Plaintiff never opened the Account nor authorized anyone to open the Account on his behalf.

132.    Furthermore, Plaintiff disputed GRC's reporting of the Account to Trans Union, wherein Plaintiff advised that he did not owe a balance to either the College of Southern Nevada or GRC, and GRC received Plaintiff's disputes via Trans Union.

133.    Therefore, upon receiving Plaintiff's First Dispute via Trans Union, GRC certainly possessed knowledge that Plaintiff was not responsible for a balance in excess of $1,700.00 on the Alleged Debt and GRC possessed knowledge that GRC's reporting of the Account on Plaintiff's Trans Union reports was inaccurate and false.

134.    Despite Plaintiff not owing a balance to the College of Southern Nevada or GRC, On or about June 21, 2024, GRC sent at least two (2) collection letters to Plaintiff asserting a balance owed by Plaintiff in excess of $1,700.00 with respect to the Alleged Debt.

135.    Despite GRC possessing the immediately-aforementioned knowledge, GRC "verified" its reporting of the Account to Trans Union wherein GRC

communicated that Plaintiff was personally responsible for the balance owed on the Account in excess of $1,700.00.

136.    Trans Union communicated GRC's credit reporting to Plaintiff via Trans Union's dispute results.

137.    Therefore, GRC communicated credit information to Trans Union concerning Plaintiff that GRC knew was false or should have know was false.

138.    As such, GRC violated the FDCPA, Section 1692e(8).

139.    GRC's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to GRC on the Alleged Debt or continue to endure GRC's unlawful collection attempts and erroneous, derogatory credit reporting of the Alleged Debt.

140.    As a direct and proximate result of GRC's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692f and f(1)**
**(as to GRC)**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

141.    GRC is subject to, and violated the provisions of, 15 United States Code, Section 1692f and f(1) by using unfair or unconscionable means in an attempt to collect the Alleged Debt and by attempting to collect an amount not expressly authorized by the agreement creating the Alleged Debt or permitted by law.

142.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt balance asserted by GRC.

143.    During or about April 2024, a student loan account with the College of Southern Nevada was opened in Plaintiff's name without Plaintiff's knowledge or consent.

144.    To the extent the student loan account was opened by an individual or entity, such individual or entity opened the account without Plaintiff's consent, knowledge, or approval.

145.    During or before June 2024, the College of Southern Nevada turned the Alleged Debt over to GRC for collection from Plaintiff.

146.    Upon discovering the Account being reported on Plaintiff's Trans Union credit report, Plaintiff disputed the Account to GRC, advising GRC that Plaintiff had never opened a student loan account with the College of Southern Nevada and as such did not owe a collections balance to GRC.

147.    As such, as of June 2024, GRC received notice and possessed knowledge that Plaintiff did not owe a balance to the College of Southern Nevada because Plaintiff had never incurred the loan forming the balance of the Alleged Debt.

148.    Despite Plaintiff not owing a balance to the College of Southern Nevada or GRC, On or about June 21, 2024, GRC sent *at least* two (2) collection letters to Plaintiff asserting a balance owed by Plaintiff in excess of $1,700.00 with respect to the Alleged Debt.

149.    As such, GRC communicated with Plaintiff in an attempt to collect the

Alleged Debt in an unfair and unconscionable manner and communicated with Plaintiff in an attempt to collect an amount on the Alleged Debt that is not permitted by law.

150.   As a direct and proximate result of GRC's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Trans Union only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

151.   Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

152.   Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

153.   Despite Plaintiff not owing a balance to the College of Southern Nevada or GRC, and despite Plaintiff's repeated disputes providing written proof of the same to Trans Union, Trans Union continued to unlawfully report the Account with a balance due and past-due in excess of $1,700.00 that was allegedly past due resulting in the Account being reported as a derogatory, negative, or adverse collection account.

154.    Such reporting of the GRC Account is false and evidences Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

155.    Plaintiff has never attended or even applied to the College of Southern Nevada.

156.    As such, it is patently inaccurate and erroneous to report that Plaintiff owed balance on student loan accounts with the College of Southern Nevada.

157.    Between April 2024 and the date of this Complaint, Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading Account information.

158.    Overall, Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Trans Union credit reports and credit file.

159.    As a result of Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional/further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Trans Union's derogatory and continued reporting of the Account and did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer

reports that reported the Account with an inflated and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

160.    Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

161.    Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)**
**(as to Trans Union only)**

Plaintiff re-alleges paragraphs one (1) through eighty-four (84) as if fully restated herein and further states as follows:

162.    Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1),  1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit file; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all

relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

163.    Specifically, Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

164.    For example, after receiving each of Plaintiff's disputes, Trans Union failed to request any documents from GRC and/or the College of Southern Nevada and merely parroted information purportedly verified by GRC.

165.    Rather than conduct its own, independent investigation/re-investigation regarding Plaintiff's several disputes, Trans Union solely relied on GRC's blanket and parroted assertions that GRC and Trans Union were entitled to report the Account with a past-due balance incurred due to identity theft and fraud.

166.    Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

167.    As such, Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit file.

168.    Such reporting is false and evidences Trans Union's failure to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

169.    Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

170.   Trans Union's investigation/reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by GRC.

171.   Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

172.   Trans   Union's   investigation/reinvestigation   procedures   are unreasonable.

173.   Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Trans Union.

174.   Trans Union's investigation/reinvestigations were *per se* deficient by reason of these failures in Trans Union's reinvestigations of Plaintiff's disputes and the Account.

175.   As a result of Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional/further credit applications as he believed he would not be able to obtain favorable credit terms as a result of Equifax's derogatory and continued reporting of the Account and did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with an inflated and erroneous past-due balance resulting in the Account being reported as a derogatory, negative, or adverse collection account.

176.   Trans Union's actions were a direct and proximate cause of, as well as a

substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

177. Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against GRC and Trans Union for maximum statutory damages for violations of the FCRA;

b. Judgment against GRC declaring that GRC violated the FCCPA;

c. Judgment against GRC for maximum statutory damages for violations of the FCCPA;

d. Judgment against GRC for maximum statutory damages for violations of the FDCPA;

e. Actual damages in an amount to be determined at trial;

f. Compensatory damages in an amount to be determined at trial;

g. Punitive damages in an amount to be determined at trial;

h. An award of attorney's fees and costs; and

i. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data— pertaining to this litigation as required by law.

## PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, ROBIN GRAHAM, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Jon P. Dubbeld, Esq. as Lead Counsel for Plaintiff.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*

**Jon P. Dubbeld, Esq., FBN 105869**
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*